UNITED STATES of America

v.

Rown BROWN a/k/a Henry "Jungo" Laws, also known as Henry Lass.

Crim. No. 87–0083.

United States District Court, District of Columbia.

March 16, 1988.

Deborah Young, Asst. U.S. Atty., Washington, D.C., for plaintiff.

Charles Chisholm, Washington, D.C., for defendant.

MEMORANDUM ORDER

JOHN GARRETT PENN, District Judge.

The defendant was charged in an indictment filed on March 5, 1987, with conspiracy to distribute and possess with the intent to distribute quantities of cocaine (21 U.S.C. § 846), interstate transportation in aid of racketeering enterprises (18 U.S.C. § 1952), and possession with intent to distribute a controlled substance (cocaine base) (21 U.S.C. § 841(a)). Two other persons, Roderick Perkins and Denise V. Williams, were named in the same indictment. Perkins was charged with the same offenses as Brown, while Williams was not charged with interstate transportation in aid of racketeering enterprises, but was charged with making available, rooms for the purpose of unlawfully manufacturing, storing, distributing, and using cocaine, a controlled substance (21 U.S.C. § 856). Perkins entered a plea of guilty to a charge of possession with intent to distribute on April 8, 1987 and was sentenced on October 9, 1987. Williams entered a plea of guilty to possession with intent to distribute on July 7, 1987 and was sentenced on October 27, 1987. Brown entered a plea of guilty on September 29, 1987 and is pending sentence.

The case is now before the Court on Brown's motion to withdraw his plea of guilty and his "Motion to Permit the Defendant Benefits Under the Criminal Justice Act."

After giving careful consideration to the motion to withdraw the plea of guilty and the opposition thereto, the Court concludes that the motion should be denied. With respect to the defendant's motion to permit the defendant "benefits under the Criminal Justice Act," the Court notes that the Court has previously indicated to the defendant and his counsel that if the defendant did not have funds available to pay for expert assistance, the Court would consider providing such funds pursuant to the Criminal Justice Act (CJA).[1] See 18 U.S.C. § 3006A. It appears, however, based upon statements made by the defendant, that his request for an examination by a psychiatrist relates solely to his intent to assert a defense of "drug induced stupor" in the

---

1. Brown has been represented by three attorneys. The first two attorneys were appointed pursuant to the Criminal Justice Act based on a representation by Brown that he did not have funds to retain counsel. Thereafter, Brown retained an attorney.

event he is allowed to set aside his plea and go to trial on the charges. That part of his motion is denied as moot since the Court concludes that the motion to set aside his plea should be denied. With respect to so much of the motion as may be addressed to whether defendant suffered psychological damage as the result of the action of the "jailors", the defendant has made no showing that such an examination is warranted.[2] That motion is also denied.

## I

Briefly, the history of this case, as it relates to the defendant, is as follows:

The defendant was arrested on February 6, 1987 and charged with possession with intent to distribute cocaine. He was indicted on March 5, 1987. He was arraigned before this Court on March 17, 1987 and at a status hearing held on April 9, 1987, his trial was scheduled for July 17, 1987. Subsequent to the date of his arraignment, Mr. Brown, who was then represented by Mr. Thomas Lumbard, asked the Court for new counsel. Mr. Lumbard moved to withdraw, the motion was granted and Mr. Richard Stern was appointed in his place. In allowing Mr. Lumbard to withdraw, the Court made no finding that the representation afforded by Mr. Lumbard was ineffective or inadequate. The Court permitted Mr. Lumbard to withdraw solely because it appeared that irreconcilable differences had occurred between the defendant and his counsel. Mr. Lumbard had been appointed to represent Mr. Brown pursuant to the Criminal Justice Act. On April 29, 1987, Mr. Lumbard withdrew as counsel and Mr. Richard Stern was appointed as his counsel pursuant to the Criminal Justice Act. The Court had scheduled a hearing on the defendant's motion to suppress evidence for

May 4, 1987, on April 29, 1987, Mr. Stern filed a motion requesting that the hearing be continued. The motion was granted.[3]

On June 8, 1987, Mr. Brown through his newly retained counsel, Charles Chisholm,[4] filed a motion to strike or withdraw the defendant's motion for a continuance as made by an attorney who did not represent the defendant. On or about the same date, Mr. Stern filed a motion to withdraw as counsel in the case. Mr. Brown represented to the Court that he had *retained* the services of Mr. Chisholm and that he was rejecting the services of appointed counsel, Mr. Stern. Pursuant to that understanding, the Court granted Mr. Stern's motion to withdraw. Thereafter, the defendant moved to dismiss the indictment against him on the grounds of lack of speedy trial. That motion was denied. *See* Memorandum Order filed July 20, 1987. In moving to dismiss the charges against him, the defendant also alleged that he had been the subject of "actual physical punishment" while being held without bail for 162 days.[5]

The case was thereafter continued for trial until September 29, 1987.

On or about September 25, 1987, the defendant moved to continue both the hearing on the pending motions and the trial. The Court continued the motions until September 29, 1987, and the trial until September 30, 1987. The defendant remained committed.[6]

At this time the defendant contended that he was unable to go to trial because of medical problems. In his motion, defendant noted that he had been held without bond since February 6, 1987, and that during this detention he had been placed in

---

2. This defendant made a similar request respecting his physical condition and when the examination was performed, it was found that his request was without merit.

3. Mr. Stern's request for a continuance was not unreasonable. He required time to review the record, prepare himself for the motion, and give consideration to filing additional motions.

4. On June 3, 1987, Mr. Chisholm filed his appearance as retained counsel.

5. The defendant has made much over the fact that while at the Petersburg Correctional Facility, he was assigned to sweep out a supply room. According to him, he was disciplined when he did not do so.

6. The defendant has been held without bond throughout these proceedings.

solitary confinement in Petersburg Correctional Institution. He also reported that he had been held in solitary confinement at the Alexandria City Detention Center in Alexandria, Virginia, when he was moved to that facility. He related in his motion that on September 6, 1987, a nurse in the Alexandria Detention Center determined that he was bleeding from the rectum but the jail authorities would not permit him to see a physician. He contends that during his incarceration his illness worsened until he had lost 20 pounds weight and "his complexion turned sallow." He stated that he was too weak to "present a defense in his trial." He represented that he was "in bad physical and mental condition and cannot engage in a trial at this time." The Court ordered an immediate physical examination of the defendant. *See* Order filed September 25, 1987.

That examination was performed on September 25, 1987. In that examination the doctor reported that Mr. Brown had reported that he had abused alcohol, cocaine, and marijuana. He reported that he drank approximately one case of Jamaican beer per day, that his cocaine habit was $700 per day for the last two and one-half years, that he used marijuana, and that he smoked approximately two packages of cigarettes per day. The doctor found that Mr. Brown had hemorrhoids, and was a drug abuser. The doctor prescribed medication. Pursuant to the consent of counsel and the defendant, the Court spoke with the doctor by phone. The doctor advised the Court that he saw no evidence of internal bleeding, that Mr. Brown reported that he had suffered from rectal bleeding for two years, that the bleeding was intermittent, and that he had been treated by a private physician in the past. The doctor advised the Court that he saw no reason why Mr. Brown could not participate in his trial on September 30, 1987. He found no evidence of any medical or mental problems which would prevent the trial from going forward. Mr. Brown's motion for a continuance was heard on September 29, 1987, and it was denied that same day.

Earlier, Mr. Brown had filed a petition for a writ of habeas corpus in the United States District Court for the District of Columbia. In his petition he complained that he was being held without bond pending his trial in this case. *See* Civil Action No. 87–2194 (D.D.C.). On September 22, 1987 Judge Charles Richey, to whom the habeas corpus action had been assigned, denied Mr. Brown's petition for habeas corpus. Mr. Brown thereafter filed a petition for a writ of habeas corpus in the Supreme Court of the United States. The petition was denied. *In re Rown Brown,* —— U.S. ——, 108 S.Ct. 314, 98 L.Ed.2d 274 (1987).

After the Court heard and denied Mr. Brown's motion for a continuance, he withdrew his plea of not guilty and entered a plea of guilty to Count 4 charging him with unlawful possession with intent to distribute a substance containing cocaine base. That morning, the Court addressed Mr. Brown concerning his right to trial and then the case was continued over until that afternoon at which time the Court agreed to consider Mr. Brown's plea of guilty.[7] A hearing was held that afternoon at which time, pursuant to Fed.R.Crim.P. 11, the Court advised Mr. Brown as to his rights, satisfied itself that Mr. Brown was voluntarily entering his plea, determined that there was a factual basis for the plea based upon the representations made by counsel and the responses to the Court's questions by Mr. Brown, and satisfied itself that Mr. Brown understood the possible consequences of his plea. Based upon the plea in this case, the trial date was vacated and the Court requested a presentence report. Sentencing was scheduled for October 26, 1987.

The co-defendants, Mr. Perkins and Ms. Williams had entered pleas of guilty in July 1987, but it was agreed that they would not be sentenced until *after* the trial of Mr. Brown. Those defendants were expected to be witnesses against Mr. Brown. After Mr. Brown entered a plea in his case, and since it appeared that the trial would not go forward and thus that the testimony of Mr. Perkins and Ms. Williams would not be

---

**7.** This allowed Brown additional time to consult with his counsel concerning his plea.

required, counsel for those defendants and the Government requested a sentencing date. Mr. Perkins was sentenced on October 9, 1987 and Ms. Williams was sentenced on October 27, 1987. On October 29, 1987, Mr. Brown filed a motion for mental evaluation and for AIDS testing, but that motion was subsequently withdrawn.[8] *See* Order filed November 19, 1987. On November 24, 1987, the defendant filed a motion for reconsideration of the order of November 19, 1987, and on November 25, 1987, the defendant moved to withdraw his plea of guilty. The Court heard the motions on January 11, 1988, and the defendant filed additional support for his motion to withdraw on January 14, 1988.

## II

The Court concludes that the motion to withdraw the plea of guilty should be denied. "If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, imposition of sentence is suspended, or disposition is had under 18 U.S.C. § 4205(c), the court *may* permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." Fed.R.Crim.P. 32(d) (emphasis the Court's). "The Court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for any reason the granting of the privilege seems fair and just." *Kercheval v. United States*, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927). "Nevertheless, it is well settled that there is no absolute right to withdraw a guilty plea before the imposition of sentence. Instead, the right to do so is within the sound discretion of the trial court which will be reversed by an appellate court only for an abuse of that discretion." *United States v. Rasmussen*, 642 F.2d 165, 167 (5th Cir.1981) (citations omitted).

In determining whether the defendant should be permitted to withdraw his plea of guilty, the Court must consider three factors: "(1) whether the defendant asserts his innocence; (2) whether the government would be prejudiced by the withdrawal; and (3) the strength of the defendant's reasons for moving to withdraw." *United States v. Trott*, 779 F.2d 912, 915 (3d Cir. 1985) (citations omitted). *See also United States v. Martinez*, 785 F.2d 111, 114 (3d Cir.1986).

Before addressing the above factors, the Court notes that at the time it accepted Mr. Brown's plea, it carefully complied with the requirements of Fed.R.Crim.P. 11. On the morning of September 29, after the Court had denied defendant's motion to continue the trial in this case and when the Court was advised of the possibility of a disposition, the Court briefly discussed the matter of a plea with the defendant. The Court advised the defendant of his right to go to trial on the charges. That afternoon, the Court heard the defendant's plea. The Court read the charge to the defendant and asked him whether he wished to plead guilty to that count of the indictment. The defendant answered in the affirmative. Transcript of September 29, 1987 (Tr.) at 11. The defendant advised the Court that he wanted to plead guilty, that he had been given sufficient time to discuss his plea with his attorney, that he was satisfied with his attorney in the case, and that he did not wish to take additional time to speak with his attorney before the Court went forward. Tr. at 11. The defendant was asked whether he was under the influence of any type of medication or drugs or intoxicants or anything which would affect his ability to understand the proceeding. The defendant advised the Court that he had not used any medication and had not used drugs in eight months. Tr. at 11 and 12. The Court further advised the defendant that he had a right to go to trial, that the burden would be on the Government to establish his guilt to the charge beyond a reasonable doubt, that he was not required to present any evidence in the case but that if he wanted to do so he had a right to do so, that by pleading guilty he was giving up his right not to make any statement

---

**8.** The defendant's motion for AIDS testing was based on his contention that he was required to share razors with other prisoners at the District of Columbia Jail.

concerning the charge against him, that he was giving up his right to confront the witnesses against him, that he was waiving his right to be heard on the various motions that he had filed in this case, and that he was giving up his right to take an appeal from the finding of guilty. The Court further advised him that he would also be giving up his right to a trial by jury in the case. The Court satisfied itself that the plea was a voluntary plea by the defendant, that he understood his right to a trial and that he voluntarily gave up those rights, that he understood the possible penalty he might suffer as a result of his plea in the case, and that there was a factual basis for the plea.

Defendant's counsel inquired concerning the petition for habeas corpus that he had filed in the Supreme Court. The Court advised him that it was the Court's understanding that the petition may be rendered moot if the defendant entered a plea of guilty, because once he entered that plea a different standard would apply on the question of whether or not he should be held without bond. The defendant was also advised during the course of the plea proceedings that since he was not a citizen of the United States, that by pleading guilty he could be deported from the country after serving any sentence imposed and that he could loose his right to ever become a citizen of the United States.

The Court observed the defendant throughout the plea proceedings and was satisfied that his answers were responsive to the questions asked by the Court and that the defendant fully understood the proceedings in which he was involved. On one or more occasions the defendant briefly conferred with his counsel, and near the end of the proceeding the defendant sought to draw a distinction as to the exact charge involved in his plea. All of these factors satisfy the Court that the defendant fully understood the nature of the proceedings and that it was a voluntary plea by the defendant. Moreover, nothing in the presentence report, which was prepared subsequent to the defendant's plea, suggests that the defendant was unable to under-

stand his plea in the case. The plea took a little over one hour.

Turning to the three factors set forth in *Trott,* the Court notes first that in his motion to withdraw his plea of guilty, the defendant does not state that he did not commit the offense. In his motion the defendant states "by review of the statement of the defendant contained in the presentence report it *appeared* that the defendant was not satisified that he had made a valid plea of guilty to the possession of cocaine with intent to distribute" (emphasis the Court's). The defendant goes on to state: "The version [the defendant's version of the offense in the Pretrial Report] of the defendant indicates that the defendant asserted that any cocaine that he possessed was only for his own use as an addict to drugs." The defendant made a similar statement at the time of his plea, but referred to the cocaine in the bathroom. He thereafter stated that he was guilty of possession with intent to distribute. He does not contradict that statement in his motion.

Even more important in this case is that if the Court should allow the defendant to withdraw his plea the Government would be severely prejudiced. The Government's two primary witnesses in the case had it gone to trial were Ms. Williams and Mr. Perkins. The defendant knew or must have known at the time he entered a plea in this case that Ms. Williams and Mr. Perkins might testify against him. Defendant did not move to withdraw his plea in the case until after Ms. Williams and Mr. Perkins had been sentenced and until after Mr. Perkins had been deported to Jamaica beyond the jurisdiction of the court. It is Mr. Perkins who could testify concerning the defendant's activities in this case because it was Mr. Perkins who allegedly travelled with the defendant from New York to the District of Columbia and who was with the defendant at the time of his arrest. Since Mr. Perkins is no longer in the United States, and is beyond the control of the Government, it is highly unlikely that he could ever be recalled as a witness to testify against Mr. Brown. This is a fact that

may have been known to Mr. Brown at the time he decided to withdraw his plea.

With respect to the strength of the defendant's reasons for moving to withdraw his plea, the Court notes that the defendant has failed to state any valid reasons for moving to withdraw. The defendant does not profess his innocence and he does not contend that he did not understand the proceedings at the time he entered his plea of guilty in this case. Indeed, he states in his motion: "It is admitted that the Court gave ample time to the defendant to explain himself and the inquiry was entirely adequate". The defendant states that: "The problem lays in the psychological state of mind of the defendant in that he was coerced by the treatment received at the prison into believing that he should be punished for not providing for his children and wife and that the only thing he now owned was a pair of shoes while at one time he earned considerable money producing records of music of the reggae type." That statement does not set forth a valid reason for the withdrawal of the plea. As the defendant admits, the Court advised him concerning his rights at the time he entered his plea and the defendant advised the Court that he understood those rights.

Taking all of the above factors into consideration, the Court concludes that the defendant's motion to withdraw his plea of guilty should be denied. In sum, the defendant is not professing his innocence at this time, he has not explained why he entered his plea of guilty if he was in fact innocent of the charges, he has made no showing that he was coerced into entering his plea, or that he did not understand the plea or the possible consequences of his plea, and perhaps most important, the withdrawal of his plea would result in extreme prejudice to the Government. For these reasons the Court concludes that the defendant's motion to withdraw his plea must be denied.

Plaintiff's second motion is not entirely clear but it appears that the defendant is asking that he have a psychiatric examination only in the event the Court allows him to withdraw his plea of guilty and sched-

ules the case for trial. The purported reason the defendant wants that examination is to support his contention that at the time he committed the offense in question he was in a "drug induced stupor." Since the Court has denied his motion to withdraw his plea, so much of his motion as would go to his defense that he was operating under a drug induced stupor at the time of the offense is now moot.

With respect to so much of the motion as relates to his alleged psychological damage as the result of the actions of his "jailors", the defendant has presented nothing to support that contention. Taking all of the above matters into consideration the Court concludes that defendant's motion to withdraw his plea must be denied and further that so much of defendant's motion as requests a psychiatric or mental examination should be denied.

It is hereby

ORDERED that defendant's motion to withdraw his plea is denied, and it is further

ORDERED that defendant's motion to permit the defendant benefits under the Criminal Justice Act is denied.